## Reiff v. Boland

*Conlen, LaBrum & Beechwood,* for plaintiff.
*Oliver C. Riethmiller,* for defendant.

BROWN, JR., J., August 30, 1935.—Following verdict for plaintiff in the amount of $5,000, defendant filed a motion for judgment n. o. v. This was dismissed by the court in banc.

On December 6, 1934, at about 6 p.m., while the plaintiff was walking from the west to the east side of Fifth Street at the south side of Lycoming Avenue, Philadelphia, he was struck and injured by an automobile operated by the defendant south on Fifth Street.

From curb to curb Fifth Street, which runs north and south, is 50 feet wide, with double trolley car tracks in the middle, the west rail being approximately eighteen feet from the west curb of Fifth Street. Lycoming Avenue is 34 feet wide between curbs, coming into Fifth Street from the west but not continuing to the east. There was a street light on the southwest corner, which was lit at the time, and a trolley car stop at the southeast corner, but there was no light or other signal regulating the flow of traffic.

Plaintiff testified that before stepping off the sidewalk to cross Fifth Street from the southwest to the southeast corner, where he intended to get on a trolley car northbound on Fifth Street, he looked up and down Fifth Street and saw nothing approaching from either direction; that he started across from the middle of the pavement; that when he was near the trolley car track, he was struck by the automobile, thrown around, and was lying three feet from the track; that he did not see the automobile until it hit him; that he saw no lights on the automobile; that he heard no noise; that no horn was blown, and that when he was lying in the street, the automobile was 15 feet below (south of) him.

The testimony of Walter Schuh and of Charles Haegele, called by the plaintiff, was much the same, that they were in a restaurant on the northwest corner of Fifth Street and Lycoming Avenue; that they heard the screech of brakes and a distinct thump or thud; that they went out and saw a package (which plaintiff had been carrying) in the center of the southbound trolley car tracks at the crossing, the plaintiff lying about 12 or 15 feet below the package and about three feet from the trolley car track, and the rear of the automobile 15 to 18 feet south of the plaintiff, with the right wheels to the right of the trolley car tracks and the left wheels between the first and second rails of the southbound tracks.

Catherine Sabath, also called as a witness for the plaintiff, testified that she was in a cigar store at the southeast corner of Fifth Street and Lycoming Avenue; that she heard the screech of brakes and a crash; that she went out and saw the plaintiff between the curb and the track, nearer to the latter, 30 feet south of Lycoming Avenue, and the automobile 30 feet south of him.

Samuel H. Smith testified, on behalf of the plaintiff, that he was standing on the southeast corner of Fifth Street and Lycoming Avenue, waiting for a northbound trolley car; that he looked north to see whether a southbound trolley car was coming, as such a car would circle

the loop several blocks south of Lycoming Avenue and then return going north; that as he started to turn his head, he noticed an automobile (which was the one operated by the defendant) about fifty feet north of Lycoming Avenue; that he "followed the car" around, his head turning with it; that he saw a shadow pass; that he heard the screech of brakes and the crash; that he saw an object rolling along the car tracks across the street from him; that he went over and saw the plaintiff lying alongside the car tracks; that he did not see the plaintiff until after he was struck; that the plaintiff was lying about twenty feet south of Lycoming Avenue and the automobile was about 15 feet farther south; that the automobile did not have headlights on it.

This was the evidence presented by the plaintiff, and defendant contended, in support of his motion for judgment n. o. v., that it showed no negligence upon his part, and also that the plaintiff was guilty of contributory negligence as a matter of law.

That the defendant was negligent is clearly apparent. It was dark at the time, and he was operating his automobile without the headlights lighted. That was "negligence sufficient to sustain a verdict or finding against him": Murray v. Lavine, 92 Pa. Superior Ct. 372, 374. In addition, he proceeded across a regular pedestrian crossing without sounding his horn, and after he struck the plaintiff, his automobile continued about thirty feet. Thus, not only did he give no warning of his approach but also he failed to have the automobile under proper control. "When a driver of a car approaches a regular crossing at an intersecting street, he is bound to exercise the greatest care for pedestrians thereon, and the car must be operated so as to stop on the shortest possible notice": Rhoads et ux. v. Herbert, 298 Pa. 522, 525. It was defendant's duty "to have his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to

arise under the circumstances": Galliano v. East Penn Electric Co., 303 Pa. 498, 503; Christ v. Hill Metal & Roofing Co., 314 Pa. 375, 378. "Of course the mere fact that a person is struck by an automobile does not raise a presumption of negligence of the driver . . ., but where, as here, a pedestrian is crossing a highway at intersecting streets in the customary manner . . ., and there is no obstruction to the driver's view of the crossing, or of the pedestrian's, it becomes the duty of the driver to be vigilant and have his car under such control that he can stop it if objects appear in his path": Gilles v. Leas, 282 Pa. 318, 321. "Care at street crossings is the highest duty of motorists and under plaintiff's proofs defendant did not exercise it": Johnson v. French, 291 Pa. 437, 439.

In McAvoy v. Kromer et al., 277 Pa. 196, Justice v. Weymann, 306 Pa. 88, and Whalen, Admx., v. Yellow Cab Co., 313 Pa. 97, relied on by defendant, the accidents occurred between crossings, and so "the rule requiring extreme care at the public crossings" was "not applicable": Whalen, Admx., v. Yellow Cab Co., supra, p. 99. "What would be negligence at a crossing is not necessarily negligence between crossings: there a vehicle need not be under instant control": Rhoads et ux. v. Herbert, supra, p. 525; Whalen, Admx., v. Yellow Cab Co., supra, pp. 99, 100.

In Flanigan v. McLean, 267 Pa. 553, also cited by defendant, it did not appear how plaintiff came to be in the street, whether he was attempting to cross it, or to get off the truck, or whether he fell from the latter, but in the present case the plaintiff testified that he was walking across the street at the regular crossing when he was struck by defendant's automobile.

The question of plaintiff's contributory negligence was one for the jury to determine. He was "pedestrian on a regular crossing", and so his "rights" were "superior to those of the approaching car": Rhoads et ux. v. Herbert, supra, p. 525. He had "the right . . . to rely on the drivers of automobiles not to run" him "down": Johnson v.

French, 291 Pa. 437, 439. "Everyone to whom a duty is due has a right to assume that it will be performed. . . . He may go on the assumption that all precautions required by statute or established rule or custom will be taken": Adams v. Gardiner, 306 Pa. 576, 583; Christ v. Hill Metal & Roofing Co., supra, p. 378. Before leaving the curb the plaintiff looked to the north and saw nothing, and so he proceeded out across the street. True, he did not look again, but he had the right to assume that at that time of night an automobile would have its headlights lighted, and he was not bound to anticipate that this duty would be disregarded. Indeed, if he had looked, he might not have seen the defendant's automobile, which was traveling without lights. The street light on the southwest corner, from which he started, was lit at the time, and so he was, no doubt, within its rays, and his vision to the north, where it was dark, may have been affected thereby. As stated in Murray v. Lavine, supra, at page 374, "having looked and seen nothing, because of defendant's negligence in traveling without lights", we could not "say he was guilty of negligence as matter of law in failing to continue peering into the darkness at his" left until he reached the trolley car tracks, where it was his duty to look again. In that case, however, the plaintiff was held not to be required to continue looking to "his right until he had crossed the street", and so the principle thereof is applicable to the present case, where the plaintiff was struck before he reached the trolley car tracks. Again, in Kunish v. Porter, 99 Pa. Superior Ct. 235, where the lights on the automobile were not burning, the plaintiff was held not guilty of contributory negligence as a matter of law.

The cases cited for defendant in which the plaintiffs were held guilty of contributory negligence as a matter of law are not controlling. Thus, in Schulte v. Yellow Cab Co., 104 Pa. Superior Ct. 130, the headlights of the cab were lit, and the accident did not occur at a crossing, the court stating, at page 135, "It was his [the plain-

tiff's] duty to exercise a somewhat higher degree of care than would be necessary if he were crossing at a regular crossing place." Again, in Rhoads et ux. v. Herbert, supra, where the accident occurred *"beyond and close* to the crossing", the court said, at page 525: "when he [a pedestrian] crosses between the regular crossings, the superior right of travel is in the automobile." In Clark v. Pittsburgh Railways Co., 314 Pa. 404, where plaintiff stepped in front of a "pretty fast" moving street car 70 feet away without again looking at it until it was four or five feet away, it was held (page 406) : "Inattention in an obviously hazardous situation is negligence." But in the instant case no hazardous situation was presented to the plaintiff. As he did not see the defendant's automobile approaching due to its headlights not being lighted, he did not intentionally undertake to cross in front of it.

In the present case the flow of traffic was not being regulated by a light or other signal, but in Taylor v. Philadelphia Rural Transit Co., 111 Pa. Superior Ct. 575, there was such a signal, which the plaintiff saw change against traffic proceeding in the direction which he was going when he was on a safety island in the middle of the street, but nevertheless he crossed between standing vehicles occupying two lanes of traffic, and stepped into an open traffic lane where he was struck.

In Letts et ux. v. Cole et al., 310 Pa. 509, where the plaintiff did not look for approaching traffic after leaving the sidewalk, it was held that she was guilty of contributory negligence as a matter of law, "in failing to look for approaching vehicles, after passing in front of the bus [in which she had been riding] and before committing herself to the street car track [upon which the defendant's automobile was running]." In the present case defendant's automobile was not proceeding directly on the trolley car tracks but was straddling the west rail, and the plaintiff was struck before he committed himself to crossing the tracks. Then, too, the accident

in that case occurred at noon, and there was nothing to have prevented the plaintiff from seeing the automobile if she had looked after passing in front of the bus, while here the plaintiff did not pass an object which obstructed his view of approaching traffic, and his failure to see defendant's automobile was due to its not having the headlights turned on. Indeed, if they had been on, his attention, no doubt, would have been attracted thereto, and he would have stopped until the automobile passed him.

The plaintiff was not required to anticipate that an automobile would be traveling at night without lights. He was lulled into security when he saw nothing approaching, and was not bound to continue to look after his senses told him the way was clear. Where traffic is moving in full view of a person who is crossing a street, the latter must, as the cases above referred to indicate, continue to look and be prepared to save himself from any hazardous situation which may arise. But where it is reasonably apparent no such situation is apt to occur (as in this case where there was no traffic in view), it would place an undue burden on a pedestrian to charge him with a duty to protect himself from dangers that could only arise from another's carelessness.

Although the testimony of Samuel Smith, one of plaintiff's witnesses, may not have been altogether consistent, it was "for the jury to reconcile such conflicting statements and say which shall prevail": Giles v. Bennett et al., 298 Pa. 158, 164. "When by reason of conflicting statements the plaintiff's testimony leaves the question of his contributory negligence in doubt, since he has not the burden of proof on that issue, it is for the jury to decide the real facts in relation thereto, notwithstanding the conflict": Adams v. Gardiner, 306 Pa. 576, 585. As "the credibility of the witness was for the jury" and it was submitted specifically to and passed upon by them, we had to give the plaintiff, in considering defendant's motion for judgment n. o. v., "the benefit of every fact

or inference of fact . . . reasonably . . . deduced from the evidence in its entirety": Haverkamp et al. v. Sussman, 317 Pa. 187, 189.

The testimony of the defendant, who was the only witness in his behalf, differed from that of the plaintiff and his witnesses, representing the plaintiff as having stepped out from between two of a line of automobiles, parked at the west curb of Fifth Street, about 150 feet south of Lycoming Avenue when the defendant's automobile was only two or three feet away from him, but as the jury did not choose to accept his version of what occurred, we had to consider, in passing upon his motion for judgment, only the "evidence supporting his (the plaintiff's) verdict" and reject "all the rest": Kulka v. Nemirovsky, 314 Pa. 134, 139; and to "read" it "in the light most favorable to" the plaintiff, giving him "the benefit of every fact and inference of fact . . . reasonably deduced from the evidence": Christ v. Hill Metal & Roofing Co., supra, p. 378. This necessitated our disregarding defendant's statement that the headlights of the automobile were on at the time, and also that the plaintiff stepped out suddenly from behind a parked automobile into the path of his car some distance below the crossing, and to conclude that the plaintiff was not only on the regular crossing but also that he was in plain view of the defendant. At the corner from which the plaintiff started to cross the street the street light was lit, and so the defendant, approaching in the darkened portion of the street, should have seen the plaintiff who was under the light or within its rays.

Under the evidence the jury might have determined that the defendant was not negligent or found the plaintiff guilty of contributory negligence, but "The jury took the view of the testimony most favorable to the plaintiff. . . . Under this view, the plaintiff was not guilty of contributory negligence": Adams v. Gardiner, supra, p. 586; and the defendant was negligent.

Defendant's motion for judgment n. o. v. was, therefore, dismissed.

NOTE.—An appeal from the foregoing decision was taken to the Supreme Court, but was withdrawn on September 9, 1935.